# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JEROME KYLES, § § Plaintiff, § § v. § § § EQUIFAX INFORMATION SERVICES LLC, § TRANS UNION LLC, and NATIONSTAR § MORTGAGE LLC, § § § § Defendants. § § | Civil Action: 3:23-cv-2291 With Jury Demand Endorsed |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Jerome Kyles ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Two of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the

"FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiff, Jerome Kyles, is a natural person residing in Chickasaw County, Mississippi, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans

Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

7. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case

arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8. Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

9. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

### IV. FACTUAL ALLEGATIONS

10. Upon information and belief, in or around June 2007 Plaintiff secured a mortgage for his property located at 404 Silver St., Okolona, MS 38860.

11. Sometime thereafter, Nationstar Mortgage LLC acquired Plaintiff's mortgage loan

and assigned loan number 65842xxxx, hereinafter ("Nationstar mortgage account").

12. On September 1, 2016, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

13. On November 4, 2016, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

14. On or around February 18, 2021, Select Portfolio Servicing acquired Plaintiff's Nationstar mortgage account, hereinafter "SPS Mortgage Account". *See* Exhibit "A".

15. On October 26, 2021, Terre M. Vardaman, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "B".

16. On November 30, 2021, Plaintiff was discharged form his chapter 13 bankruptcy, and excepted from discharge Plaintiff's SPS Mortgage Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "C".

17. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

18. On or around December 13, 2021, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

19. Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Nationstar and SPS mortgage accounts.

20. After discharge, and to this day, Plaintiff still lives in the home and makes timely

and regular mortgage payments to the now SPS Mortgage, has historically made timely and regular payments to both the Nationstar Mortgage and SPS Mortgage, even after Plaintiff's bankruptcy, and plans on continuing to make timely and regular mortgage payments to the SPS Mortgage.

21. Sometime in May 2023, Plaintiff obtained his three-bureau credit report and noticed that the Equifax and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

22. Within the Equifax and Trans Union credit reports Plaintiff noticed that both reported the Nationstar mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines after the Bankruptcy was discharged. [1]

23. Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

24. On or about June 2023, Plaintiff sent direct disputes to Equifax and Trans Union, and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.

25. Within these dispute letter, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax and Trans Union, are each attached hereto as Exhibits "E" and "F" respectively.

26. Equifax received Plaintiff's dispute on June 29, 2023. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Plaintiff's Equifax Dispute Letter is attached hereto as Exhibit "G".

27. Upon information and belief, Equifax did not respond to Plaintiff's dispute.

28. Plaintiff then obtained an updated copy of his three-bureau credit report on August 30, 2023 and within the Equifax credit report Plaintiff noticed that the Nationstar tradeline was now missing, presumably deleted rather than modified. A redacted copy of Plaintiff's August 30, 2023 Three-bureau Credit Report is attached hereto as Exhibit "H".

29. Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar Mortgage tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the SPS Mortgage account because it was still open following the bankruptcy discharge.

30. Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines.

31. Plaintiff sent a very clear dispute, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

32. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Nationstar account.

33. Upon the Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

34. In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

35. In the alternative to the allegation that Equifax failed to contact Nationstar, it is

alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

36. Trans Union received Plaintiff's dispute on June 27, 2023. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Plaintiff's Trans Union Dispute Letter is attached hereto as Exhibit "I".

37. Upon information and belief, Trans Union did not respond to Plaintiff's dispute.

38. Plaintiff then obtained an updated copy of his three-bureau credit report on August 30, 2023 and within the Trans Union credit report Plaintiff noticed that the Nationstar tradeline was now missing, presumably deleted rather than modified. *See* Exhibit "H".

39. Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the SPS Mortgage account because it was still open following the bankruptcy discharge.

40. Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

41. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Nationstar account.

42. Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly,

Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

43. In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

44. In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

45. In June 2023, Plaintiff sent a direct dispute to Nationstar and attached the exact dispute letters and evidence sent to Equifax and Trans Union. Plaintiff asked Nationstar to investigate its servicing practices and reporting of the Nationstar mortgage account and asked Nationstar to provide information and respond with any findings of any errors.

46. A redacted copy of Plaintiff's unsigned direct dispute letter to Nationstar is attached hereto as Exhibit "J".

47. A USPS Tracking receipt shows that Nationstar received and picked up Plaintiff's dispute letter concerning the Nationstar mortgage account on June 26, 2023, and it was confirmed as delivered. A redacted copy of the USPS Tracking receipt for the direct dispute letter to Nationstar concerning the Nationstar mortgage account is attached hereto as Exhibit "K".

48. Upon information and belief, Nationstar did not respond to Plaintiff's dispute letter concerning the Nationstar mortgage account.

## V. GROUNDS FOR RELIEF

**COUNT I – EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. § 1681e(b))**

49. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

50. Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

51. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

52. Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

53. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

54. After Equifax knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

55. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

56. Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff

for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

57.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

58.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

59.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

60.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

61.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

62.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

63. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

64. Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

65. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

66. Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

67. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

68. After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

69. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the

mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

70. Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

71. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

72. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

73. Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

74. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

75. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

76. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

77. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

78. Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

79. Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

80. As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

81. Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual

or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

82. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

83. Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

84. Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

85. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

86. Defendants performed perfunctory and essentially useless reinvestigations resulting

in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

87. Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

88. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

89. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Jerome Kyles, prays that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security

for Defendants' violations of the FCRA, applicable state law, and common law;

  B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

  C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

  D. Order that the CRA Defendants, Equifax Information Services LLC and Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

  E. Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>October 17, 2023</u>

                Respectfully submitted,

                */s/ Matthew P. Forsberg*
                Matthew P. Forsberg
                TX State Bar No. 24082581
                Matt@FieldsLaw.com
                FIELDS LAW FIRM
                9999 Wayzata Blvd.
                Minnetonka, Minnesota 55305
                (612) 383-1868 (telephone)
                (612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

/s/ *Jonathan A. Heeps*                .
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| <u>October 17, 2023</u> | <u>*/s/ Matthew P. Forsberg*</u> |
| Date | Matthew P. Forsberg |